[No. 30755. Department Two. April 1, 1949.]

MARGIE L. ARMSTRONG, *Respondent,* v. SAM MAY *et al.,*
*Defendants,* RECONSTRUCTION FINANCE
CORPORATION, *Appellant.*[1]

*Frank R. Grimsdell* and *Patrick M. Tammany,* for appel-
lant.

*Frederick B. Cohen* and *John E. Bowen,* for respondent.

[1]Reported in 204 P. (2d) 510.

SCHWELLENBACH, J.—This is a question as to priority between a judgment creditor and a chattel mortgagee, the judgment having been entered subsequent to the mortgage, but the mortgage having been given subsequent to the institution of the proceedings which resulted in judgment.

On April 6, 1946, Mrs. Armstrong commenced an action in the superior court of Kitsap county against Clarence Cheplak and wife, alleging a partnership in the business of the Diamond Taxicab Company, and alleging that the defendant was threatening to dispose of the partnership assets, and asking for an injunction and an accounting. The defendants were represented by Ray R. Greenwood, attorney at law. On May 24, 1946, Roy A. Holland, an attorney employed by Mr. Greenwood, served notice of withdrawal as attorney for defendants, and on May 27, 1946, an order of default was entered.

Meanwhile, on May 23, 1946, Cheplak sold the assets of the business to Paul Moreland, who had full and complete knowledge of the partnership interest of Mrs. Armstrong. On June 27, 1946, Moreland sold the business to Sam and Marjorie B. May, who also had full knowledge of the claims of Mrs. Armstrong.

On September 3, 1946, upon application of the plaintiff, the court made an order joining Paul Moreland and wife, and Sam and Marjorie B. May, as additional defendants. Judgment was rendered May 12, 1947, in favor of Mrs. Armstrong against Cheplak, Moreland and wife, and Sam May and Marjorie B. May, in the sum of $1,750, the judgment being made a lien on the cars, franchise, license, good will and all other assets of the Diamond Cab Company. Greenwood and Holland represented the Mays in this proceeding.

On June 27, 1946, Mrs. May mortgaged the cabs to the National Bank of Washington for $1,908. On August 3, 1946, she gave a second mortgage to Mr. Greenwood for $1,700. This was assigned to William L. Kerr.

At some time in the proceedings, Mrs. May transferred her interests to McClure and Wilson. McClure is her son, and Wilson was his war buddy. The testimony is obscure as to whether Mrs. May bought from Moreland for the pur-

pose of holding until the boys could get a loan, or whether the boys obtained the loan for the purpose of assisting her.

Mr. Greenwood was her attorney when she bought from Moreland, and represented and advised both her and the boys concerning the transfer to them.

At any rate, the boys applied to the Reconstruction Finance Corporation for a G.I. loan. On October 2, 1946, F. A. Grimsdell, counsel for the R.F.C., wrote to them in reference to their application, in part, as follows:

"2. It will be necessary for you to employ an attorney for the purpose of searching the records in the office of the Auditor, Port Orchard, Washington, to determine if there are any liens against the automobiles required to be mortgaged. Such title search should be from January 1, 1940 to date. The cars are presently owned by Mrs. Marjorie B. May, who purchased them approximately four months ago from Paul Moreland, who owned them for approximately one month and purchased them from Clarence Shiplap [Cheplak] (the spelling of the above name should be checked before search is made), all in Port Orchard. You stated that Roy Greenwood, attorney in Port Orchard, heretofore made a search of the records covering these cars and it may be that he can give the required opinion with very little additional work. The records searched should reflect any liens against all parties. The records searched should consist of the following:

> Chattel Mortgages—Mortgagor
> " " —Mortgagee
> Conditional Sales —Vendee
> " " —Vendor
> Federal Tax Liens
> Chattel Liens
> Execution Docket in the Clerk's Office
> Personal Property tax records

"The attorney making such search should direct a letter to this office advising of any liens or, if there are none, such a statement should be made."

McClure and Wilson employed Mr. Greenwood to make the title search, and Mr. Holland wrote to the appellant advising it of the various liens thereon, but in none of the letters did he mention anything concerning the suit brought by Mrs. Armstrong.

On November 13th, the property was mortgaged to the R.F.C. for $3,400, and on December 12th the money was disbursed in satisfaction of all record liens and mortgages.

When McClure and Wilson failed to make payments on their loan, the R.F.C. commenced foreclosure by notice and sale. Mrs. Armstrong had the action transferred to the superior court by filing the complaint seeking to have her judgment declared superior and prior to the mortgage of the R.F.C. The complaint prayed that the purported sale of the Diamond Cab Company be declared a fraudulent conveyance, and void as to creditors. The trial court entered judgment as prayed for, from which the R.F.C. appeals.

Appellant asserts that the employment of Mr. Greenwood to search the record, by McClure and Wilson, was for a special purpose, and any knowledge on the part of Mr. Greenwood as to the pendency of Mrs. Armstrong's action cannot be imputed to the boys. 5 Am. Jur. 303, Attorneys at Law, § 75.

Although we are satisfied from the record that this was not a casual, single employment for a special purpose, on the part of the boys, and that any knowledge Mr. Greenwood might have concerning the property involved in this transaction is imputable to them, that point is not determinative of the case as to this appellant, and we will not consider it further.

The trial court found that the appellant had notice of the transactions and of the pendency of the suit of respondent by virtue of which she claims a judgment lien. The evidence shows that appellant did know that the property had been sold several times within recent months. However, there is no evidence whatsoever indicating that appellant knew or should have known that the transactions were fraudulent as to respondent.

It is also argued that the knowledge of Mr. Greenwood is imputed to the appellant by way of an attorney and client relationship. However, appellant never employed Greenwood and Holland to search the title for them. While it is true that appellant required that a title report be made in

connection with application for a G.I. loan, it gave no one authority to make the search for *itself*. The search was to be made *by* the applicant and *for* the applicant.

The conclusion that appellant was not a bona fide mortgagee because of either constructive or actual notice, is erroneous.

 Error is also assigned to the conclusion of the trial court that respondent was an existing creditor at the time of the said transaction.

It was held in *Wheeler v. Kuntsbeck*, 31 Ohio App. 338, 166 N. E. 913, that where, at the time a mortgage was executed and recorded, a personal injury action against the mortgagor had been brought, but judgment had not been rendered therein, the plaintiff in the tort action was not an "existing creditor" as regards priority of the mortgage lien over the judgment lien.

*In re Lewis' Estate*, 230 Iowa 694, 298 N. W. 842, 137 A. L. R. 562, held that "existing creditors," within the statute regarding the validity of a chattel mortgage as against existing creditors, means general creditors who have acquired a lien thereon.

In *Watson v. First Nat. Bank of Clarkston*, 82 Wash. 65, 143 Pac. 451, this court said:

"A chattel mortgage not recorded as required by statute (Rem. & Bal. Code, § 3660 [P. C. 349 § 3]) while void as to creditors who have acquired some form of lien upon the mortgaged property, is, nevertheless, valid as between the mortgagor and the mortgagee. In *Heal v. Evans Creek Coal & Coke Co.*, 71 Wash. 225, 128 Pac. 211, it was said:

" 'Whether properly recorded or not, the mortgage was valid as between the mortgagor and mortgagee, and it is only creditors who have acquired some form of lien upon the mortgaged property that can question the right of the mortgagee to foreclose against such mortgaged property.'

"Where the mortgage is executed and delivered, and prior to the time of its being recorded, persons other than the mortgagee become general creditors of the mortgagor, but do not become lien creditors until after the mortgage is filed for record, the rights of the mortgagee are superior to those of such general creditors. The mortgage speaks as of the date it is placed of record."

At the time appellant took and recorded its mortgage on the property of the cab company, respondent had commenced action against her former partner. However, she had not acquired any form of lien upon the mortgaged property. She was not an "existing creditor" who acquired prior rights over the mortgagee as to the mortgaged property.

In *Pacific Mfg. Co. v. Brown*, 8 Wash. 347, 36 Pac. 273, in discussing whether or not the respondent had actual knowledge of the pendency of a prior suit, this court said:

"The plaintiff in the suit to foreclose said mortgage might have reduced its rights to a certainty, and set all such questions at rest, by filing a notice of *lis pendens* under the statute. Not having done so, we would not find in appellants' favor on the question of actual knowledge, unless there was a very clear preponderance of proof in their favor."

Here, the respondent, when she commenced her suit against Cheplak, could have protected herself against subsequent purchasers or encumbrancers of the taxicab business by attaching the property which was the subject matter of the suit. Such action would have been notice to all the world that she claimed an interest in the property. Having failed to do so, she cannot now be heard to say that the appellant had notice of her claim.

That portion of the judgment decreeing that the judgment lien of the plaintiff, Margie L. Armstrong, is superior to the mortgage lien of the defendant Reconstruction Finance Corporation, and directing the clerk of the court to pay unto the plaintiff the sum of $1,232.62, at present in the registry of the court, and decreeing costs to the plaintiff against the defendant Reconstruction Finance Corporation, is reversed. The cause is remanded to the trial court with instructions to enter a judgment in accordance with this opinion. .

JEFFERS, C. J., ROBINSON, SIMPSON, and GRADY, JJ., concur.