[No. 18508–0–I.   Division One.   October 12, 1987.]

WILLIAM MIEBACH, *Respondent,* v. SAFECO TITLE INSURANCE COMPANY, *Appellant.*

*Joseph G. Nolan,* for appellant.

*Daniel Brink,* for respondent.

*James R. Irwin* and *Frances Pennell,* amici curiae.

JOHNSEN, J.*—In October 1979, respondent William Miebach purchased a house and a lot from Arctic Trading Company for $50,000, subject to $30,000 in encumbrances. In connection with this transaction, respondent also purchased a title insurance policy from appellant Safeco Title Insurance Company. The face amount of the policy was $80,000.

Subsequent litigation resulted in respondent losing any claim of title to such property. *See Miebach v. Colasurdo,* 35 Wn. App. 803, 670 P.2d 276 (1983), *rev'd in part,* 102 Wn.2d 170, 685 P.2d 1074 (1984). Appellant thereafter tendered the sum of $50,000 to respondent as payment for the loss of title under the terms of respondent's title insurance policy. Respondent claimed an additional $30,000 under the policy, but appellant refused to pay more. This action followed.

The trial court subsequently granted respondent summary judgment for $30,000, and this appeal followed.

Appellant contends the trial court erred in failing to hold that respondent's title insurance policy only covered his

---

*This appeal was heard by two Supreme Court Justices and a retired Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

actual "out of pocket" loss. Appellant argues that since the policy expressly allows recovery only for the lesser of the policy holder's "actual loss" or the face amount of the policy, and since respondent only paid $50,000 for the property, respondent's actual loss was $50,000.

Respondent argues that "actual loss" in these circumstances is measured by the fair market value of the property, less outstanding encumbrances. Therefore, since the only evidence of value sets the value of the property at $115,000, and since the encumbrances totaled $30,000, respondent's actual loss was $85,000, and he was entitled to recover the full policy amount of $80,000.

Appellant and amici curiae cite *Securities Serv., Inc. v. Transamerica Title Ins. Co.,* 20 Wn. App. 664, 583 P.2d 1217, *review denied,* 91 Wn.2d 1008 (1978) for the proposition that "actual loss" can only mean "out of pocket" losses because a title insurance policy is a contract of indemnity. However, other courts, including a Washington court, have held that title insurance policies are more than a contract of indemnity. 9 J. Appleman, *Insurance* § 5201, at 3 (1981); *Kiniski v. Archway Motel, Inc.,* 21 Wn. App. 555, 560, 586 P.2d 502 (1978) (title insurance is a guaranty of the accuracy of company search and record title), *review denied,* 91 Wn.2d 1023 (1979); *L. Smirlock Realty Corp. v. Title Guar. Co.,* 97 A.D.2d 208, 469 N.Y.S.2d 415, 422 (1983) (title insurance is in the nature of a warranty against encumbrances). These later authorities, particularly the *L. Smirlock Realty* case, represent the modern and better reasoned approach to title insurance cases.

However, regardless of whether a title policy is usually a contract of indemnity, the legal effect of a particular policy still depends on the contractual language used. Thus, if the words "actual loss" mean more than out of pocket losses, then the policy at issue here is not solely a contract of indemnity.

■ It is well settled that insurance policies are to be construed in accordance with the general rules applicable to all other contracts. *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70,

73, 549 P.2d 9 (1976). The terms of a particular policy must be given their usual, popular and ordinary meaning unless a contrary intent is clearly demonstrated by the entirety of the policy. *Safeco Ins. Co. v. McManemy*, 72 Wn.2d 211, 212, 432 P.2d 537 (1967). If a provision of the policy is capable of two meanings or constructions, the meaning most favorable for the insured must be employed. *Shotwell v. Transamerica Title Ins. Co.*, 92 Wn.2d 161, 167, 588 P.2d 208 (1978).

In the instant case, respondent's policy contained the following provision:

(a) The liability of the Company under this policy shall in no case exceed the least of:
(i) the *actual loss* of the insured claimant; or
(ii) the amount of insurance stated in Schedule A.

(Italics ours.) The present dispute centers on the meaning of the words "actual loss." Appellant argues that the usual, popular, and ordinary meaning of the words "actual loss" is the amount of money lost "out of pocket." However, respondent argues that such a definition of "actual loss" leads to nonsensical results, *e.g.*, if the insured received the property as a gift, or as part of an inheritance.

Assuming the words "actual loss" may be reasonably interpreted to mean "out of pocket" losses, it would seem equally reasonable to interpret "actual loss" as the "real"[1] loss suffered by the insured, including the loss of any beneficial bargain the insured made in purchasing the property. *See Hartman v. Shambaugh*, 96 N.M. 359, 630 P.2d 758 (1981) ("actual loss" policy entitled insured to recover value of land up to amount of the policy); *Fohn v. Title Ins. Corp.*, 529 S.W.2d 1 (Mo. 1975) ("actual loss" may include benefit of bargain obtained at purchase). Thus, it appears that the words "actual loss" are, in this context, susceptible of two meanings or constructions. Therefore, the words are

---

[1]The term "actual" is generally defined as "existing in reality or in fact; not merely possible, but real". *Webster's New World Dictionary* 8 (2d Concise ed. 1975).

ambiguous and the meaning most favorable to the insured must be employed. *Shotwell,* at 167.

However, appellant and amici curiae argue that under *Securities Serv., Inc. v. Transamerica Title Ins. Co.,* 20 Wn. App. 664, 583 P.2d 1217, *review denied,* 91 Wn.2d 1008 (1978), "actual loss" always means the "out of pocket" loss suffered by the insured. We disagree.

In *Securities Service,* Division Two of this court held that the "actual loss" suffered by an insured under a title insurance policy was the "out of pocket" loss caused by the defect in the insured's title. *Securities Service,* at 674. The court determined that the "out of pocket" loss was the amount paid by the policyholder to acquire its interest in the property. However, a careful reading of *Securities Service* shows that the court was not necessarily holding that "actual loss" means "out of pocket" losses. The court noted that the measure of an insured's loss due to a title encumbrance (as opposed to total loss of title) is ordinarily the insured's "out of pocket" expenses in removing the encumbrances. *Securities Service,* at 673–74. Since Securities Service not only did not expend any moneys to remove the encumbrances, but allowed the property to be sold at sheriff's sale, Securities Service had not *actually lost* the out of pocket amount that would have been required to remove the encumbrance. Rather, all that Securities Service actually lost was the consideration it paid for its interest in the property. Thus, when the court stated that the consideration paid was the true measure of what Securities Service was "out of pocket," *Securities Service,* at 674, it was applying the normal measure of loss for title *encumbrances* (*i.e.,* out of pocket expenditures to remove the encumbrance), as opposed to the normal measure of loss for a total loss of title.[2] Therefore, *Securities Service* is distin-

---

[2]Courts in other jurisdictions have uniformly held that the measure of damages for a complete failure of title is the value of the insured owner's land up to the limits of the policy. R. Cunningham, W. Stoebuck & D. Whitman, *Property* § 11.14, at 825 (1984); Annot., *Measure, Extent or Amount of Recovery on Policy of*

guishable from the present case.

Furthermore, even if the *Securities Service* court was holding that "actual loss" always means "out of pocket" losses we would refuse to follow that holding because the court did not apply the rules of insurance contract construction to the words "actual loss," and did not cite any authority or set forth any reasons supporting its interpretation. As noted previously, an application of the rules for construction of insurance contracts indicates that the words "actual loss" should be construed in favor of the insured.

Amici also argue that the interpretation of the words "actual loss" suggested here conflicts with paragraph six of the insurance policy at issue. That paragraph states that liability under the policy shall be the least of the insured's actual loss or the face amount of the policy. According to amici, such an interpretation would mean that an insured owner's "actual loss" would always be equivalent to the amount of the policy, Brief of Amici, at 12, and therefore the interpretation would render paragraph six meaningless.

Clearly, in a complete failure of title situation, an insured's actual loss could be less than the policy limits if the insured's property is valued at less than the face amount of the policy. In a partial failure of title situation, the actual loss will almost always be less than the face amount of the policy.

Finally, amici curiae suggest in their brief that summary judgment was not proper because a genuine issue of fact existed as to the value of respondent's property. However, the suggestion is not presented as argument, and is not contained in the argument section of the brief. Therefore, since the "argument" is not properly presented, RAP 10.3, and since appellant Safeco has not raised the issue, the argument will not be considered.

---

*Title Insurance,* 60 A.L.R.2d 972, 975 (1958); 44 Am. Jur. 2d *Insurance* § 1566 (1982); 15A G. Couch, *Insurance* § 57:182, at 200 (2d ed. 1983).

Affirmed.

DOLLIVER and DURHAM, JJ. Pro Tem., concur.

Review denied by Supreme Court February 1, 1988.